ACCEPTED
04-15-00120-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
4/21/2015 5:57:21 PM
KEITH HOTTLE
CLERK

**NO. 04-15-00120-CV**

**IN THE FOURTH COURT OF APPEALS**
**AT SAN ANTONIO, TEXAS**

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
4/21/2015 5:57:21 PM
KEITH E. HOTTLE
Clerk

**UNIVERSITY OF THE INCARNATE WORD,**
**Defendant--Appellant**
**v.**

**VALERIE REDUS, Individually, and ROBERT M. REDUS,**
**Individually and as Administrator of the Estate of Cameron M. Redus**
**Plaintiffs—Appellees**

**On appeal from the 150th Judicial District Court**
**of Bexar County, Texas**

**APPELLEES' MOTION TO DISMISS FOR**
**WANT OF JURISDICTION**

Appellees Valerie and Robert M. ("Mickey") Redus move this Court to dismiss this interlocutory appeal for want of jurisdiction. Tex. R. Civ. P. 42.3(a). Defendant and appellant University of the Incarnate Word ("UIW") filed this interlocutory appeal after the trial court signed an order denying UIW's Plea to the Jurisdiction. This Court lacks subject-matter jurisdiction because UIW is not a "governmental unit" as defined in Tex. Civ. Prac. & Rem. Code § 101.001(3). Interlocutory orders are not appealable unless expressly authorized by statute, and UIW, as a private, non-profit institution of higher education, lacks a statutory basis for invoking this Court's appellate jurisdiction.

# INTRODUCTION

Appellees Valerie and Mickey Redus are the parents of Robert Cameron Redus. Trial court defendant Christopher Carter shot Cameron Redus five times, killing him in the parking lot at Cameron's off-campus apartment in Alamo Heights on December 6, 2013. Appellant UIW employed Carter as an on-duty Campus Police Officer when he shot Cameron.

Valerie and Mickey Redus sued UIW and Carter on May 6, 2014 for claims arising from Cameron's death. C.R. 1. UIW filed its Original Answer on June 2, 2014 and removed the case to federal court. C.R. 22. UIW did not originally raise a Texas Tort Claims Act affirmative defense but did claim immunity as a "charitable institution." C.R. 34. See Tex. Civ. Prac. & Rem Code § 84.003. The federal court remanded this action to state court on November 25, 2014. C.R. 381.

UIW filed its First Amended Answer on February 13, 2015, adding the Texas Tort Claims Act as an affirmative defense. C.R. 109. UIW also filed its Plea to the Jurisdiction, claiming that plaintiffs' claims are limited by the Texas Tort Claims Act because UIW—or at least its police department—is a "governmental unit." C.R. 125. See Tex. Civ. Prac. & Rem. Code § 101.001(3).

The trial court heard UIW's plea to the jurisdiction on February 26, 2015 and signed an order denying it on March 2, 2015. C.R. 418. UIW initiated this interlocutory appeal of the denial on March 3, citing Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) as this Court's jurisdictional basis. C.R. 419. The trial court has not made findings of fact despite appellees' timely requests. Exhibits 1 and 2.

# MOTION TO DISMISS

**I. An appellate court must consider whether it has jurisdiction of an interlocutory appeal before proceeding to determine the merits.**

"[T]he general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); see also Tex. Civ. Prac. & Rem. Code § 51.012 ("a person may take an appeal...from a final judgment of the district or county court.") An interlocutory order is appealable "only if a statute explicitly provides appellate jurisdiction." *Stary v. DeBord*, 967 S.W.2d 352, 352-353 (Tex. 1998).

An appellate court has no basis to issue an opinion about the merits of an interlocutory appeal if it lacks jurisdiction. *Id.* at 354. See also, *Herrera v. Texas Department of Family and Protective Services*, 2007 WL 2044580 (Tex.App.—San Antonio 2007, no pet.)(per curiam). An appellate court should determine its jurisdiction to consider the interlocutory appeal before reaching the merits. *Minton v. Gunn*, 355 S.W.3d 634, 639 (Tex. 2011).

Courts narrowly construe statutes authorizing interlocutory appeals because they are a "narrow exception to the general rule that only final judgments are appealable." *City of Houston v. Estate of Jones*, 388 S.W.3d 663, 666 (Tex. 2012)(per curiam). UIW appears to present an issue no other private institution of higher education has raised: Can a private university can claim both "charitable immunity" and "governmental unit" status?

Two appellate courts held they lacked jurisdiction over interlocutory appeals by police officers employed by private institutions like UIW because the officers were are not "an officer or employee of the state or a political subdivision of the state" under § 51.014(a)(5). *Rice Univ. v. Rafaey*, 413 S.W.3d 667, 661 (Tex.App.—Houston [14th Dist.] 2013, pet. filed); and *Methodist Hosp. v. Miller,* 405 S.W.3d 101 112 (Tex.App.-Dallas 2012, no pet.). The *Rice* court noted that Rice University did not claim any other jurisdictional basis for the interlocutory appeal. *Id.* at 671. In its attempt to avoid these decisions, UIW attempts to claim "governmental unit" status for itself. See Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

**II. This Court lacks subject matter jurisdiction of the denial of UIW's plea to the jurisdiction because UIW is not a "governmental unit" as defined by Tex. Civ. Prac. & Rem. Code § 101.001(3).**

An interlocutory appeal is not allowed following the grant or denial of a plea to the jurisdiction unless the plea is made by a "governmental unit." See *Critical Air Medicine, Inc. v. Shepard,* 2005 WL 3533130 (Tex.App.—San Antonio 2005, no pet.)(dismissing interlocutory appeal filed under § 51.014(a)(8) by private corporation); *Mobil Oil Corp. v. Shores,* 128 S.W.3d 718, 721 (Tex.App.-Fort Worth 2004, no pet.) (same); *Cantu Services, v. United Freedom Associates, Inc.* 329 S.W.3d 58, 64 (Tex. App.—El Paso 2010, no pet.).

This Court noted in *Critical Air*:

> It is undisputed that Critical Air is a private corporation and not an agency of state government, a political subdivision of the state, or an institution, agency or organ of government whose status and authority is derived from state law.

4

*Id.* at \*2. Similarly, it is undisputed that UIW is a private university and not a state government agency. This Court should dismiss this appeal.

### III. Neither UIW nor its Campus Police is not a "governmental unit" under the Texas Tort Claims Act.

UIW expressly seeks the protections of the Texas Tort Claims Act as a "governmental unit." C.R. at 120 (UIW's First Amended Answer at ¶ 63-64). UIW argues that its police department draws its right to exist from a statute (Tex. Educ. Code § 51.212) and that the department and its officers are licensed by the Texas Commission on Law Enforcement, a "regulatory state agency." *Id.* UIW, in its appellate brief, cites no case law holding that any part of a private university is a "governmental unit."

#### A. No Texas court has ever held that a private institution is a "governmental unit" in the absence of a specific statute and government funding of the service at issue.

No Texas court has ever held that a private, non-profit institution of higher education is a "governmental unit" in the absence of a statute defining the institution and its actions as such. In *Klein v. Hernandez*, 315, S.W.2d 1, 2 (Tex. 2010), the plaintiff sued Baylor College of Medicine for malpractice by its physicians at Ben Taub Hospital, a public hospital. The Supreme Court noted that:

> Baylor [College of Medicine] is a private, non-profit medical school, but is also a 'supported medical school,' which means that it has contracts with the Texas Higher Education Coordinating Board and receives state funding specifically allocated for training physicians who provide medical care at public hospitals such as Ben Taub.

The Court noted that private medical school derived its status as a "governmental unit" from Tex. Health & Safety Code § 312.006(a), which defines Baylor as a "governmental unit" when its doctors are working at public hospitals. *Id.* at 8.

In contrast to the Baylor College of Medicine, UIW has no claim to a contract with a state agency, to receiving state funding, or to a statute defining any part of the university as a "governmental unit." UIW does not even address the implications of the Texas Supreme Court's *Klein* holding, choosing instead to rely almost completely on *LTTS Charter School, Inc. v. C2 Construction, Inc.*, 342 S.W.3d 73 (Tex. 2011). See Appellant's Brief at 24-26.

The Supreme Court, in *LTTS Charter School*, held that an open-enrollment charter school operated as part of the public school system is a "governmental unit." *Id.* at 76. The Supreme Court's opinion drew a vigorous dissent (*id.* at 82), and the case is easily distinguishable from UIW's claims. Charter schools by statute are "part of the public school system" which bears "the primary responsibility for implementing the state's system of public education." *Id.* at 82. Charter schools receive government funding and operate within the Texas public school testing system. *Id.* at 74.

UIW, by contrast, has specifically and purposely chosen to operate outside Texas' system of public higher education. See Tex. Educ. Code § 61.003, with definitions of "public senior college or university" and "private or independent institution of higher education." UIW identifies itself as:

> an incorporated charitable institution created and sponsored by the Sisters of Charity of the Incarnate Word, a Catholic order of nuns. The Sisters established the school in 1881, devoted to providing education without private gain. The UIW is a charitable institution under both Texas and Federal law.

C.R. 109. State and private institutions of higher education have different enabling statutes for establishing campus police departments. Compare Tex. Educ. Code § 51.203 (state) and § 51.212 (private).

UIW also cites *Zacharie v. City of San Antonio by and through San Antonio Water System Board of Trustees*, 952 S.W.2d 56, 59 (Tex.App.—San Antonio 1997, no writ) and *City of Leon Valley Economic Development Corporation v. Little*, 422 S.W.3d S.W.3d 37, 40 (Tex.App.—San Antonio 2013, no pet.) as supporting its argument. Both cases are distinguishable. In *Zacharie*, this Court held that San Antonio's Water System was a city agent and thus entitled to immunity.

In *Leon Valley*, this Court held that an economic development corporation's ("EDC") statutory designation as a "governmental unit" under Tex. Loc. Gov. Code § 505.106(b) did not protect it from contractual liability, although the status did authorized the EDC to file an interlocutory appeal. In allowing the interlocutory appeal to proceed, this Court followed the EDC's enabling statute: "For purposes of Chapter 101, Civil Practice and Remedies Code, a Type B corporation is a *governmental unit* and the corporation's actions are governmental functions." Tex. Loc. Gov. Code § 505.106(b). Neither this Court nor any other Texas court has held that that a private institution is a governmental unit in the absence of a specific statute and government funding of the services at issue.

**B. That a statute authorizes UIW to establish a Campus Police Department does not make the UIW Campus Police a "governmental unit."**

Section 101.001(3)(D) of the Civil Practices and Remedies Code defines a "governmental unit" as

> any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

UIW argues that a Texas statute—Tex. Educ. Code § 51.212—authorizes the creation of UIW's police department, that its officers are licensed by a state agency, and that they enforce state law. Appellant's Brief at 17-24.

So, UIW's argument goes, the UIW Campus Police Department is an "institution, agency, or organ of government the...authority of which [is] derived from...laws passed by the legislature." The argument proves too much ignoring the fact that UIW as private university is not an "institution, agency, or organ of government."

The only case applying this statute to any extent is *LTTS Charter School, Inc.*, 342 S.W.3d at 80. The Supreme Court held only that § 101.001(3)(D) does not require a statute specifically establishing the government agency. The Court's holding, however, is primarily based on Tex. Educ. Code § 12.105: "An open-enrollment charter school is part of the public school system" and the public schools are governmental units. See §101.001(3)(B).

UIW's argument misinterprets §101.001(3)(D). According to the Supreme Court, an "open-enrollment charter school" is an "institution, agency, or organ of

8

government" because it is "part of the public school system." *Id.* at 82. Unlike open enrollment public charter schools, UIW has no claim to being part of a "state institution of higher education" or part of the "field of public higher education." See Tex. Educ. Code § 51.203 (enabling statute for police departments at state universities) and § 61.002 (enabling statute for the Texas Higher Education Coordinating Board). UIW has specifically chosen to avoid the extensive state regulation of higher education, such as tuition regulation and degree offerings. See Tex. Educ. Code Title 3 generally.

Textually—as the statute requires—UIW cannot establish that it is a governmental "institution, agency, or organ." See Tex. Civ. Prac. & Rem. Code § 101.001(3)(D). Merely being an "institution, agency, or organ" whose existence is enabled by a statute and governed by a state agency does make the "institution, agency, or organ" a "governmental unit."

For example, Texas lawyers draw their right to practice law in Texas courts and to form law firms from the State Bar of Texas, "a public corporation and an administrative agency of the judicial department of government." See Tex. Govt. Code § 81.011. Only persons licensed by the State Bar of Texas can be employed as lawyers in law firms.

Texas barbers draw their authority to "perform any act of barbering" from Tex. Occ. Code § 1601.251 and Texas barbershops draw their authority to exist from Tex. Occ. Code § 1601.301. Barbers and barbershops are governed by a state licensing agency, the Texas Department of Licensing and Regulation ("TDLR"), a

"regulatory state agency," pursuant to administrative rules. See Tex. Admin. Code § 82.1, et seq. Neither barbers nor barbershops are turned into a "governmental unit" by these statutes.

The same could be said for numerous other respectable occupations. But neither barbershops nor law firms are entitled to call themselves "governmental units" and claim the immunities of the TTCA when sued in tort.

**C.      Allowing UIW's campus police to enforce state and municipal law in limited circumstances does not turn UIW or its police department into a "governmental unit."**

UIW argues that the authority of its Campus Police and the individually licensed officer to enforce state law bolsters its claim to be a "governmental unit." See Appellant's Brief at 19-23. The truth, however, is that any person can enforce a good portion of Texas criminal law without a TCOLE license.

Article 14.01(a) of the Code of Criminal Procedure allows:

> A peace officer or *any other person*, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.

The statute grants both peace officers and private citizens the same rights of warrantless arrest for the two broadly defined categories of crimes. See Office of the Attorney General, Texas, Opinion No. MW-537, Dec. 22, 1987 (citing *Alexander v. United States*, 390 F.2d 101 (5th Cir. 1968); *Romo v. State*, 577 S.W.2d 251 (Tex. Crim. App. 1979); *Woods v. State*, 213 S.W.2d 685 (Tex. Crim.

App. 1948) ("Any individual may make a 'citizen's arrest' under that provision, provided that all applicable legal requirements are met.")

No Texas court has ever held that a statute authorizing a private entity to enforce state law makes that entity an "institution, agency, or organ of government" for purposes of the Texas Tort Claims Act. See Tex. Code of Crim. Proc. § 2.12 for an extended list of 36 types of peace officers and § 14.03 for the authority given to the officers. UIW Campus Police are "officers commissioned under… Subchapter E, Chapter 51, Education Code." Tex. Code. Crim. Proc. § 2.12(8). The officers' authority is defined by § 14.03.

In its application for a "law enforcement agency number," UIW identifies its "Requesting Governmental Body" as "University of the Incarnate Word." C.R. 206. UIW's Board of Trustees approved a resolution supporting the formation of the police department. C.R. 350. As noted above, Texas law gives "governing boards of private institutions of higher education" the authority "to employ and commission police officers." Tex. Educ. Code § 51.212. Nothing about this process turns UIW into a "governmental unit." UIW's Campus Police Department receives no government funding and has no contract with any government agency.

The cases UIW cites in the appellate brief do not support its argument; they instead hold that private entities subject themselves to Constitutional violations by their involvement with governmental functions. Appellant's Brief at 19-20.

For example, in *Evans v. Newton*, 382 U.S. 296 (1966), the Supreme Court held that private managers of a public park could not enforce racial segregation in the park. In *Rosborough v. Management & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003), the Fifth Circuit found that "private prison-management corporations and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury." In other words, the cases cited by UIW hold that a private entity subjects itself to greater, not less, liability by taking on a government function. This is consistent with the statute providing limited immunity for peace officers employed by private universities. See Tex. Educ. Code § 51.212(b)(1).

FOR THESE REASONS, appellees Valerie and Mickey Redus move and respectfully pray that this Court dismiss with ten days' notice this interlocutory appeal for want of jurisdiction under Tex. R. App. P. 42.3(a) and grant all other and further relief to which appellees are entitled.

Respectfully submitted,

**LAW OFFICE OF BRENT C. PERRY, PC**



_____

BRENT C. PERRY
STATE BAR NO. 15799650
800 COMMERCE STREET
HOUSTON, TX 77002
TEL: (713) 334-6628
FAX: (713)237-0415
BRENTPERRY@BRENTPERRYLAW.COM

**HERRING LAW FIRM**

S/MASON W. HERRING
MASON W. HERRING
STATE BAR NO. 24071746
2727 ALLEN PARKWAY
SUITE 1150
HOUSTON, TEXAS 77019
(832) 500-3170 – TELEPHONE
(832) 500-3172 – FACSIMILE
MHERRING@HERRINGLAWFIRM.COM

**THE HERRERA LAW FIRM**

S/JORGE A. HERRERA
FRANK HERRERA, JR.
STATE BAR NO. 09531000
FHERRERA@HERRERALAW.COM
JORGE A. HERRERA
STATE BAR NO. 24044242
JHERRERA@HERRERALAW.COM
111 SOLEDAD, SUITE 1900
SAN ANTONIO, TEXAS 78205
TEL:   210.224.1054
FAX:   210.228.0887

**ATTORNEYS FOR APPELLEES**

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion has been served on the following counsel of record by electronic service in accordance with Tex. R. App. P. 9.5(e), on April 21, 2015.

Laurence S. Kurth
Matthew Wymer
Beirne, Maynard & Parsons, LLP
112 East Pecan St., Suite 2750
San Antonio, TX 78205
**Counsel for Defendant UIW**

Robert A. Valadez
Shelton & Valadez
600 Navarro St., Suite 500
San Antonio, TX 78205
**Counsel for Defendant Christopher Carter**

_____
BRENT C. PERRY

## Certificate of Conference

As required by Tex. R. App. P. 10.1(a)(5), I conferred with Matthew Wymer, counsel for appellant University of the Incarnate Word, about the merits of this motion, and University of the Incarnate Word opposes this motion.

_____

Brent C. Perry